IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT COPES | * | |
|    Plaintiff | * | |
|      v | * | Civil Action No. DKC-11-215 |
| WARDEN | * | |
|    Defendant | * | |

***

## MEMORANDUM OPINION

Counsel for Defendant has filed a Response to the Order to Show Cause issued in the above-captioned case. ECF No. 3. Plaintiff has filed a Motion for Extension of Time to permit exhaustion of administrative remedies. ECF No. 5. Plaintiff has not yet filed a Motion to Proceed In Forma Pauperis, nor has he paid the $350 filing fee as directed by the court.

Counsel provides a declaration under oath from Bruce Liller, Acting Chief of Psychology at NBCI. ECF No. 3 at Ex. A. Liller states that Plaintiff is currently assigned to the Special Needs Unit (SNU), which is a housing unit within the prison reserved for inmates suffering mental illness. It is staffed with correctional officers who have received special training in understanding the needs of the mentally ill. Plaintiff and the 39 other inmates assigned to SNU are under constant observation and are regularly seen by mental health professionals during weekly rounds. In addition group therapy sessions are held approximately every week when logistics allow. A treatment team staffed with the Housing Unit Manager, the SNU Coordinator, the Chief of Psychology, SNU correctional officers from each shift, a social worker, and the case manager assigned to the SNU population meet with each inmate montly to review progress. The program is the highest level of psychiatric care an inmate can receive in the Division of Correction (DOC).

Plaintiff was making progress in the SNU until January 2011, when he received an adjustment conviction and was placed on disciplinary segregation status, prohibiting him from leaving the SNU. Liller states Plaintiff was angry about the disciplinary status, which coincides with the time frame the instant case was filed with this court. He claims the treatment team is working with Plaintiff to improve his behavior to shorten the time he is confined to disciplinary segregation and he is improving. *Id* at pp. 3—4.

Plaintiff requests a transfer to either Springfield Hospital, which is not a DOC facility; Crownsville Hospital, which closed in 2004; or Clifton T. Perkins Hospital, which generally does not provide the in-depth observation and treatment Plaintiff is currently receiving. In addition Plaintiff's request for a transfer to Patuxent is not feasible because it is an acute mental health treatment unit reserved for inmates who are psychotic or otherwise experiencing acute mental illness. *Id*. at p. 4. While mentally ill, Plaintiff is neither psychotic nor experiencing acute episodes of a mental breakdown.

Finally, Liller notes that Plaintiff is due to be released in approximately two years. When Plaintiff is closer to his release date he may be considered for Patuxent's transition unit designed to help mentally ill inmates with few resources to transition back to society. Liller states Plaintiff is aware of the eligibility criteria for the program because it is part of his SNU treatment contract. *Id*.

In his Motion for Extension of Time, Plaintiff states that Liller is a liar, he does not have a SNU contract, he is not receiving psychiatric care, his condition is serious enough to warrant a transfer to Patuxent, and there are gang members preying on the inmates housed in the SNU. ECF No. 5. Plaintiff attaches copies of the ARPs he has filed. They are similar to the papers filed in this court, filled with allegations that the SNU is illegal and he is not receiving proper

2

care. *Id*. at Attachment 1. It appears Plaintiff believes he is currently eligible for Patuxent's transition unit as he states Patuxent has the resources to insure he receives proper care after he is released. Plaintiff also repeats his requests for a CIA investigation into NBCI and accuses a correctional officer of threatening to kill him because he did not want to assign Plaintiff to a food service job. *Id*.

The issue currently before the court is whether Plaintiff is entitled to injunctive relief. A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Plaintiff seeks transfer to institutions apparently not suited for his unique circumstances. ECF No. 1, 3 and 5. Other than his bald allegations that staff are corrupt, there is no evidence that Plaintiff's serious psychiatric needs are being ignored. While Plaintiff states that others have been assaulted by gang members, he does not allege that there is a specific risk of harm to him posed by other inmates housed in the SNU which are not being addressed by staff. Given that Plaintiff is currently receiving psychiatric care and that there are plans to address his needs when he is closer to being released, an injunction requiring his immediate transfer is not warranted.

In light of the fact that Plaintiff is not entitled to injunctive relief and has failed to either pay the $350 filing fee or file a Motion to Proceed in Forma Pauperis, the Complaint will be dismissed without prejudice. A separate Order follows.

Date:  February 18, 2011  /s/
DEBORAH K. CHASANOW
United States District Judge